UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INSURANCE COMPANY OF THE WEST, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-cv-01875-SEB-MG ) |
| HIGH PERFORMANCE ALLOYS, INC., et al., | ) ) ) |
| Defendants. | ) ) |
| HIGH PERFORMANCE ALLOYS, INC., | ) ) |
| Counter Claimant, | ) ) |
| v. | ) ) |
| INSURANCE COMPANY OF THE WEST, | ) ) |
| Counter Defendant. | ) |

**ORDER ON PENDING MOTIONS**

Now before the Court are the Motion for Judgment on the Pleadings [Dkt. 31], filed by Plaintiff and Counter Defendant Insurance Company of the West ("ICW") and the Motion for Summary Judgment [Dkt. 33], filed by Defendant and Counter Claimant High Performance Alloys, Inc. ("High Performance"). This is an insurance coverage dispute in which ICW seeks a judgment that it has no duty to defend or indemnify High Performance against claims asserted against it in an underlying wrongful death lawsuit. High Performance has filed a counterclaim seeking a declaration that ICW owes a duty to defend and indemnify it because the factual basis of the underlying lawsuit falls within

1

ICW's coverage of High Performance. For the reasons detailed below, we <u>GRANT</u> Plaintiff and Counter Defendant's (ICW) Motion for Judgment on the Pleadings and <u>DENY</u> Defendant and Counter Claimant's (High Performance) Motion for Summary Judgment.

**Factual Background**

**I.     The ICW Policy**

ICW issued a Workers Compensation and Employers' Liability Insurance Policy to High Performance under policy number WIN 5057361 01 with an effective period of October 1, 2021 to October 1, 2022 (the "Policy"). The Policy provides for two kinds of coverage, Workers Compensation Insurance and Employers Liability Insurance. As relevant to this litigation, Part Two of the Policy applies to bodily injury caused by an accident, including bodily injury resulting in death, and in relevant part states as follows:

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease ….

**B. We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance ….

**C. Exclusions**

This insurance does not cover:

\*\*\*

2

    4.    Any obligation imposed by workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

    5.    Bodily injury intentionally caused or aggravated by you;

\*\*\*

    11.    Fines or penalties imposed for violation of federal or state law; ….

Dkt. 1-5.

## II. The Underlying Litigation

On August 11, 2023, Sara Sullivan, as Wife and Representative of the Estate of Elliot Sullivan, filed a lawsuit in Tipton Circuit Court against High Performance and other entities not involved in this litigation, alleging that her husband, Elliot Sullivan, was employed as a plant manager for High Performance at its facility located in Tipton County, Indiana, when he sustained personal injuries while working, resulting in his death (the "*Sullivan* Lawsuit"). In summary, the complaint in the *Sullivan* Lawsuit alleges as follows:[1]

On August 12, 2022, High Performance employees were running configuration tests on a 750-Ton Large Erie Forge Press (the "Erie Forge Press") inside High Performance's Tipton facility. Dkt. 1-5 ¶ 7; ¶ 25. The Erie Forge Press is equipped on each corner of its bolster plate with metal bars, referred to as "shims" or "hard-stops",

---

[1] ICW attached the original complaint filed in the *Sullivan* Lawsuit to its complaint in this case. High Performance attached the amended complaint filed in the *Sullivan* Lawsuit to its motion for summary judgment. The parties have not pointed us to any differences relevant to our determination of the issues before us. Accordingly, we have cited to the original complaint as that was the version attached to the pleadings.

which are used to configure the machine. *Id.* at 2 ¶ 8. During the August 12 testing, the Erie Forge Press operator lowered the head of the press, bringing it into contact with the shims, and as pressure was applied to the device, the southwest corner shim shot out from underneath the bolster plate at a high rate of speed toward the control panel and struck Mr. Sullivan in the abdomen. *Id.* ¶ 10, ¶ 25. Mr. Sullivan died as a result of the injuries sustained from the impact. *Id.* ¶ 25.

Prior to the incident, High Performance had received a "serious" violation from the Indiana Occupational Safety and Health Administration for having "ineffectively guarded" equipment and thus is alleged to have had actual knowledge that its employees were in danger of being struck by and caught in hazards due to its policy and practice of operating machinery without protective shields to properly safeguard its employees. *Id.* ¶¶ 74–75. Also prior to the incident, High Performance is alleged to have had actual knowledge of a software or system update that provided Erie Forge Press operators the level of precision needed to complete the calibration and measuring process without using shims or hard-stops, but High Performance failed to install the update, forcing its employees to continue to use the shims and hard-stops to configure the machines. *Id.* ¶¶ 77–78.

Based on these allegations, the *Sullivan* Lawsuit asserts a gross negligence claim against High Performance, alleging that High Performance acted "with gross negligence and in a willful and wanton manner, without regard to the safety of others" as well as "with actual intent to cause injury to [Mr. Sullivan]" and that Mr. Sullivan died "as a

direct and proximate result" of High Performance's "grossly negligent and careless acts and omissions." *Id.* ¶¶ 73, 79, 80.

### III.  The Instant Litigation

ICW filed the instant complaint on October 18, 2023, seeking a declaratory judgment that it has no duty to defend or indemnify High Performance in the *Sullivan* Lawsuit. High Performance filed a counterclaim on December 20, 2023, seeking a declaration from the Court that ICW does have a duty to defend and indemnify it in the underlying lawsuit. Now before the Court are ICW's motion for judgment on the pleadings and High Performance's motion for summary judgment, both filed on June 7, 2024. Those motions are fully briefed and ripe for ruling.

## Legal Analysis

### I.  Applicable Legal Standards

ICW's motion for judgment on the pleadings asks the Court to rule as a matter of law that it owes no duty to defend or indemnify High Performance in the *Sullivan* Lawsuit. High Performance's responsive motion for summary judgment on its counterclaim asks, in turn, that the Court find that ICW is required to defend and indemnify High Performance in that lawsuit.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the complaint and answer have been filed. Fed. R. Civ. P. 12(c). Where, as here, "the movant seeks to 'dispose of the case on the basis of the underlying substantive merits[,] … the appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings.'" *United States Specialty Ins. Co. v. Vill.*

5

*of Melrose Park*, 455 F. Supp. 3d 681, 687 (N.D. Ill. 2020) (quoting *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993)).  Accordingly, the court applies "the same standard to each of the pending motions, except that [we] may consider undisputed facts outside of the pleadings and their attachments to resolve [the] summary judgment motion."  *Admiral Ins. Co. v. Anderson*, 529 F. Supp. 3d 804, 810 (N.D. Ill. 2021).  Thus, the motions will be granted only if "no genuine issues of material fact remain to be resolved and … the [movant] is entitled to judgment as a matter of law."  *Pro Assurance Speciality Ins. Co. v. Imperial Realty Co.*, 545 F. Supp. 3d 618, 620 (N.D. Ill. 2021) (citation and quotation marks omitted).

## II.    Interpretation of Insurance Contracts Under Indiana Law

There is no dispute that Indiana law governs the outcome and analysis of the issues presented in this case.  In an insurance policy dispute under Indiana law, "the insured has the burden of proving that the coverage applies, and the insurer, if relying on an exclusion to deny coverage, has the burden of demonstrating that the exclusion is applicable."  *Bowman, Heintz, Boscia & Vician, P.C. v. Valiant Ins. Co.*, 35 F. Supp. 3d 1015, 1023 (N.D. Ind 2014) (quotation marks and citation omitted).  The interpretation of an insurance policy entails matters of law.  *Westfield Companies v. Knapp*, 804 N.E.2d 1270, 1273–74 (Ind. Ct. App. 2004).  Insurance contract provisions are subject to the same rules of construction as other contracts.  Thus, courts must construe insurance policies "as a whole, rather than considering individual words, phrases or paragraphs."  *Id.* at 1274.  If the contract language is clear and unambiguous, it should be given its plain and ordinary meaning. *Newman Mfg., Inc. v. Transcon. Ins. Co.*, 871 N.E.2d 396,

401 (Ind. Ct. App. 2007). Additionally, "[i]nsurance companies are free to limit their liability, so long as they do so in a manner consistent with public policy as reflected by case or statutory law." *Gheae v. Founders Ins. Co.*, 854 N.E.2d 419, 423 (Ind. Ct. App. 2006). Thus, "[a]n insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability." *Haag v. Castro*, 959 N.E.2d 819, 824 (Ind. 2012) (quoting *Property-Owners Ins. Co. v. Ted's Tavern, Inc.*, 853 N.E.2d 973, 978 (Ind. Ct. App. 2006)).

Under Indiana law, "an insurer's duty to defend its insureds is broader than its coverage for liability or duty to indemnify." *Indiana Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1381–82 (Ind. Ct. App. 1997), *trans. denied*. In order to determine whether an insurer has a duty to defend, Indiana courts look to the allegations contained within the complaint as well as to those facts known or ascertainable by the insurer after a reasonable investigation. *Jim Barna Log Sys. Midwest, Inc. v. General Cas. Ins. Co. of Wisconsin*, 791 N.E.2d 816, 823 (Ind. Ct. App. 2003). The complaint's allegations "give rise to a duty to defend whenever, if proved true, coverage would attach." *Federal Ins. Co. v. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997). However, "[w]hen the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." *Wayne Twp. Bd. of Sch. Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1208 (Ind. Ct. App. 1995).

### III. Discussion

The question before us here is whether the *Sullivan* Lawsuit alleges facts that, if proved true, could result in coverage under the Employers Liability Insurance part of the Policy. As we explain below, we hold that it does not, and thus, that ICW is entitled to a declaratory judgment that it has no duty to defend or indemnify High Performance.

The *Sullivan* Lawsuit alleges a single count against High Performance for "gross negligence" based on High Performance's alleged failure to enact certain safety precautions to protect its employees, including Mr. Sullivan, from harm. The *Sullivan* Lawsuit further alleges that, in failing to enact those safety precautions, High Performance acted "with gross negligence and in a willful and wanton matter, without regard to the safety of others" as well as "with actual intent to cause injury" to Mr. Sullivan. Mr. Sullivan is also alleged to have died while on the job as a result of High Performance's "grossly negligent, and careless acts and omissions."

Indiana's Workers' Compensation Act "provides an employee's sole remedy against an employer for injuries occurring by accident, which arise out of and in the course of his employment." *Summers v. Crossroads Galvanizing, LLC*, No. 4:21-CV-074-PPS-JEM, 2023 WL 7109695, at *3 (N.D. Ind. Oct. 27, 2023) (citing *Sims v. United States Fid. & Guar. Co.*, 782 N.E.2d 345, 349–50 (Ind. 2003); *Tippmann v. Hensler*, 716 N.E.2d 372, 374–75 (Ind. 1999)). There is no dispute here that the *Sullivan* Lawsuit alleges that Mr. Sullivan was employed by High Performance and that he died while on the job as a result of High Performance's careless acts and omissions. ICW and High Performance agree that the gross negligence claim alleged in the *Sullivan* Lawsuit

therefore falls under the exclusive jurisdiction of Indiana's Worker's Compensation Act and should be dismissed on those grounds.[2]  The parties dispute, however, whether ICW nonetheless has a duty to defend and/or indemnify High Performance in the underlying litigation, regardless of the claim's ultimate futility under the clear terms of the statute and the contract.

ICW argues that it has no duty to defend or indemnify because the Policy's worker's compensation exclusion, which precludes coverage for "any obligation imposed by workers compensation … law … or any similar law" applies, barring any possibility of coverage for the gross negligence claim alleged against High Performance in the *Sullivan* Lawsuit.  High Performance, on the other hand, argues that the worker's compensation exclusion does not bar coverage here because the plaintiff in the underlying litigation is not claiming any entitlement to benefits under the workers' compensation law and thus is not seeking a remedy excluded under the Policy.  High Performance contends that, under Indiana law, the fact that the underlying plaintiff's attempt to bypass obviously applicable workers' compensation laws is unlikely to succeed does not relieve ICW of the duty to defend that civil claim on behalf of its insured when, as pled, the underlying plaintiff's claim for damages falls within the scope of the Policy.

Under Indiana law, the mere fact that a claim is unlikely to succeed does not obviate the insurer's duty to defend that claim as the duty to defend applies even to

---

[2] To the extent the allegations in the *Sullivan* Lawsuit could be read to allege an intentional tort not governed by worker's compensation exclusivity, the Policy's intentional harm exclusion would preclude coverage for any such claim.  This case therefore turns on the applicability of the worker's compensation exclusion and we do not discuss the intentional harm exclusion further.

9

"unfounded, false or fraudulent suits based upon risks it has insured." *Cincinnati Ins. Co. v. Mallon*, 409 N.E.2d 1100, 1105 (Ind. Ct. App. 1980). However, "when the underlying factual basis of the complaint, even if proved true, would not result in liability under the insurance policy, the insurance company can properly refuse to defend." *Id.* Therefore, while an insurer is not "entitled to ignore the relief the claimant actually seeks against its insured and to refuse to defend on the theory that the claimant cannot possibly prevail as a matter of law," an insurer can refuse to defend in cases where there is a "policy exclusion[] that would have applied even if the underlying claim had been valid." *Home Fed. Sav. Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 732 (7th Cir. 2012).

     Here, even assuming all factual allegations in the *Sullivan* Lawsuit to be true, to wit, that High Performance was aware of a highly dangerous condition faced by its employee, Mr. Sullivan, yet still exposed him to that condition, resulting in his untimely death while on the job, such allegations would not result in liability under the Policy because the underlying complaint specifically alleges that Mr. Sullivan was employed by High Performance, that he was engaged in work at the time of his death, and that High Performance's negligent acts and omissions caused his death. The parties agree that the only recourse for the underlying plaintiff is through Indiana's workers compensation laws. We find, therefore, that the Policy's workers compensation exclusion, which excludes from coverage "any obligation imposed by workers compensation … or any similar laws" unambiguously bars coverage for the sole claim brought against High Performance in the *Sullivan* Lawsuit, thus relieving ICW of the duty to defend.

We are not persuaded by High Performance's contention that, because the *Sullivan* Lawsuit is a wrongful death suit and the remedy sought is not workers compensation benefits, the Policy's workers compensation exclusion does not apply. High Performance has not cited, nor have we found, any case "holding that exclusionary language like that used here—'any obligation imposed' by workers' compensation—comes into play only where an employee has actually applied for or obtained benefits…." *Culligan v. State Compensation Ins. Fund*, 81 Cal. App. 4th 429, 439 (Cal. Ct. App. 2000).

To the contrary, the only cases cited by either side specifically interpreting workers compensation exclusions in employers' liability policies with analogous language to that at issue here have held that "[t]he 'obligation imposed' by the workers' compensation law is readily understood to mean the obligation as an employer, under workers' compensation, to provide benefits. That inchoate obligation exists *whether or not an employee actually chooses to seek benefits*." *Id.* (emphasis added). Thus, so long as the underlying lawsuit concerns an employee subject to the remedy of workers compensation laws, courts have interpreted workers compensation exclusions similar to the exclusion at bar to exclude the employees' claims from coverage, regardless of whether they were pursuing a remedy under a workers compensation scheme. *See*, *e.g.*, *Id.* at 439–40; *Seneca Ins. Co. v. Cybernet Entertainment, LLC*, 760 Fed. App'x 541, 544–45 (9 Cir. 2019) (holding that provision in employer's liability portion of the insurance policy excluding coverage for "any obligation imposed by a workers' compensation … law" barred coverage for negligence claims alleging that the insured failed to maintain a safe workplace); *Employers Assurance Co. v. Ford Store Morgan*

11

*Hill, Inc.*, 608 F. Supp. 3d 930, 942 (N.D. Cal. 2022) (concluding as a matter of law that "the sole claim asserted against [the insured] in the Underlying Action—for negligent and grossly negligent breach of [the insured's] duty to provide [the employee plaintiff] with a safe work environment—falls within the scope of workers' compensation law and thus falls within the scope of the Policy's workers' compensation exclusion" set forth in the employer liability part of the insurance policy that excluded from coverage "[a]ny obligation imposed by a workers compensation … or any similar law"); *Stephenson v. Argonaut Ins. Co.*, 125 Cal. App. 4th 962, 974 (Cal. Ct. App. 2004) (holding that workers compensation exclusion in employer liability part of the insurance policy "unambiguously eliminated any potential of coverage" for the insured in the underlying breach of contract action).

    In addition to its comporting with the plain language of the exclusion, we find that this interpretation best aligns with the purpose of the two-part workers compensation and employer liability coverage provided by the Policy. As the Seventh Circuit has recognized:

> A workers compensation and employer liability policy is a standard liability insurance policy designed to insure an employer primarily for liability under workers' compensation laws, but secondarily for liability for workplace accidents not covered by such laws—for example, liability for a claim by an employee's family member injured by a workplace injury to the employee (as when an injury to a pregnant employee injures her fetus as well), or for claims for workplace injuries not covered by workers' compensation, such as injuries to farm employees or an injury to an employee by a fellow employee motivated by spite. … Such insurance coverage fills gaps in workers' compensation law that sometimes allow an employee to sue his employer in tort, bypassing the limits on workers' compensation relief.

*Hayes Lemmerz Int'l, Inc. v. Ace Am. Ins. Co.*, 619 F.3d 777, 778–79 (7th Cir. 2010) (internal citations omitted).  Under High Performance's construction, the "structural distinction" of the Policy "would be lost, for an employee required by the exclusivity rule to use only workers' compensation could simply choose not to use it and consequently create a duty to defend.  The cost limits of the compensation bargain would be lost, all at the whim of the employee." *Culligan*, 81 Cal. App. 4th at 439.

The cases cited by High Performance in support of its position, namely, *TKK USA, Inc. v. Safety National Casualty Corporation*, 727 F.3d 782 (7th Cir. 2013), *Home Federal Savings Bank v. Ticor Title Insurance Company*, 696 F.3d 725 (7th Cir. 2012), and *Hayes Lemmerz International, Inc. v. American Insurance Company*, 619 F.3d 777 (7th Cir. 2010), do not alter our analysis as none of these cases dealt with the application of a workers compensation exclusion that purportedly barred coverage as that issue is presented here.  Rather, these cases recognize only that, regardless of the merits of the underlying claim, an insurance company still has a duty to defend its insured against risks covered by the policy *unless* policy exclusions exist that, assuming the validity of the claim, nonetheless unambiguously bar coverage.  As set forth above, we find that such an exclusion exists here.

ICW and High Performance agree that any asserted "bodily injury" claim against High Performance in the *Sullivan* Lawsuit concerns an employee subject to the remedy of the Indiana's Workers' Compensation Act.  Accordingly, as a matter of law, even assuming the factual basis of the underlying litigation to be true, coverage is precluded by

13

the Policy's workers compensation exclusion and ICW has no duty to defend or indemnify High Performance in the *Sullivan* Lawsuit.

### IV. Conclusion

For the reasons detailed above, we hold that Plaintiff does not owe a duty to defend or indemnify Defendant under Part II of the Workers Compensation and Employers Liability Policy for the gross negligence claim alleged against Defendant in the *Sullivan* Lawsuit. Accordingly, Plaintiff's Motion for Judgment on the Pleadings [Dkt. 31] is <u>GRANTED</u> and Defendant's Motion for Summary Judgment [33] on its counterclaim is <u>DENIED</u>. All other pending motions are <u>DENIED AS MOOT</u>. Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date: 1/29/2025

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Matthew James Anderson
TABOR LAW FIRM
manderson@maylorber.com

Trevor J. Crossen
CROSSEN LAW FIRM, LLC
trevor@crossenlawfirm.com

Mary E. McClellan
Quintairos, Prieto, Wood & Boyer
mary.mcclellan@qpwblaw.com

William Kilburn McVisk
Tressler LLP
wmcvisk@tresslerllp.com

Robert J. Palmer
MAY OBERFELL AND LORBER
rpalmer@maylorber.com

Colleen N Savage
Sgro and Roger
csavage@sgroandroger.com

Anthony Sgro
Sgro & Roger
tsgro@sgroandroger.com

Georgianne Marie Walker
MAY OBERFELL LORBER
gwalker@maylorber.com